Court is now in session. The third case for today is case number 2020-3019 to Renee Stringer versus Town of Jonesboro et al. You may proceed. Is it Mr. Critzelis? Critzelis, yes. Critzelis, excuse me. Thank you. Good afternoon, Your Honors. May it please the court. Joshua Critzelis on behalf of Plaintiff Appellant Renee Stringer. We're all familiar with the adage, when it rains it pours. But for Renee Stringer, when it rains it floods. And not by water from the sky, but with human excrement sprouting from the Town of Jonesboro sewerage system onto her property and into waters of the United States. And it has done so for years, despite alleged enforcement actions by the state of Jonesboro. The District Court dismissed Stringer's Clean Water Act citizen suit for civil penalties and equitable relief, her First Amendment retaliation claim, and her Fifth Amendment takings claim, and has condemned Stringer to sacrifice her federal and state constitutional rights, her dignity, her health, and the health of our nation's waters so that her property may serve as a sewage overflow dump for the Town of Jonesboro. But Title 33 U.S. Code Section 1319 G6A2 precludes a duplicative citizen suit for civil penalties if all of the following four elements are shown. The commencement of a state administrative penalty action, the diligent prosecution of that action, the administrative penalty action is taken pursuant to a state law comparable to Section 1319 G, and the state is prosecuting the same Clean Water Act violations that form the basis of the citizen suit complaint. So, counsel, as I read the magistrate's report in the District Court's opinion, the comparable state action that they relied on That's correct, Your Honor. Okay. Am I allowed on appeal to consider what LDEQ was doing with respect to this problem? And because it's in the record, so what what do we what do we what do you think I'm precluded from looking at that or what? Your Honor, I would I would say that because the magistrate's report and recommendation is what the District Court based its dismissal upon. Initially. Initially, correct. If the if this court were to find that the magistrate's report and recommendation was made an error, then. I'm not reviewing the magistrate's report and recommendation. Correct, but the District Court adopted those reasons as its own as grounds for dismissal. Didn't it also add in something about LDEQ? Correct. At record page 528, 529, there is one sentence regarding LDEQ where the District Court took judicial notice of a penalty assessment with it. Now, correct me if I'm wrong, because you know the record better than I do. Is there evidence in the record of what LDEQ has done with respect to this problem? Your Honor, in the record here, there's evidence only of what LDEQ has documented, but not what they have prosecuted or anything of that nature. Okay, well maybe it's not enough, but the record. Correct, so the last DEQ action taken that is shown in the record was from February of 2018 at the same time that LDH, Department of Health, issued its penalty assessment for violations of the Sanitary Code. Well, do you concede that when LDEQ, as opposed to the Department of Health, is enforcing the relevant Louisiana law here, that it is enforcing something that is comparable to the Clean Water Act for purposes of 1319? Your Honor, I would say that when DEQ is enforcing the Louisiana Environmental Quality Act, that is a comparable state law as this Court has already made up. And we don't challenge the comparability aspect of Lockett. Rather, we're asking this Court to sort of fill in the issues that were not addressed by the appellants in Lockett, such as when the administrative penalty action commences versus, you know, Well, I hear what you're saying, but the difficulty is is that, that's why I'm asking about what the record shows with respect to LDEQ. And I'll ask the other side the same questions, of course. But, I mean, if there was a focus on the Health Department and Sanitary Code, that's one thing. But if there, if it's both, and we have to look at the record to see if we can affirm on the basis, you know, perhaps on an alternative basis. I just, I mean, so if you concede that LDEQ is enforcing a comparable law when it's enforcing the Environmental Quality Act in Louisiana, do you lose? No, Your Honor. Absolutely not. Tell me why not. As the complaint shows, I mean, you know, that was part of the argument later, but the town of Jonesboro has deceived DEQ, and those allegations have not been contested throughout this entire proceeding. Deceived? Did you say deceived? When deceived, and I believe if it's more clearly described in the opposition for the appellee's motion for leave to file an addendum to their brief, where we picked apart the records that are already in the record from DEQ and showed where responses sent on behalf of the town of Jonesboro to DEQ claim that the Cemetery Lift Station is in working order. Go ahead, sir. So, do I understand your argument to be that even if DEQ issued compliance orders regarding the Cemetery Lift Station, the department took no substantive steps to stop the discharges from the Cemetery Lift Station, and that these continue to occur, so it's not a diligent prosecution? And that may be because they have improper information from the community who's saying it's been solved, but they're not diligently prosecuting, and so we would need to send it back for that determination at least. Is that your position? Correct, Your Honor, and that's part of the position. I would say that as far as what DEQ has been doing so far, we don't actually get to the diligent prosecution aspect because there has there has not been the commencement of the type of action that is required to trigger Section 1319 G6A2, an administrative penalty action. Okay. Not even having the action, much less doing what they should do if they had one. Correct. I hear, yeah, I hear what you're saying. That's very helpful because you're saying, well, yeah, there might be stuff in the record with pertains of DEQ, but it's not enough, you're saying, I think, to meet the statutory requirements that would bar the citizen's suit. Correct, Your Honor, and on top of that, the the issue of whether the state is diligently prosecuting, we believe has been sufficiently challenged through the pleadings of accepting the factual allegations, that's true, and to really determine if there has or has not been diligent prosecution, that's a factual inquiry that we haven't got there yet. Right, and that shouldn't be decided on a 12B6 motion anyway, so that's where we're at. Did you have other things that you wanted to point out to us? Yes, Your Honor, just on top of the, well, I guess this really goes to the heart of the issue that was attacked, both LDH and DEQ explained how nothing that they were doing meets all four elements of Section 1319G6. For the most part, we will rest on the briefs for the remainder of those issues. I do want to touch on the dismissal for, dismissal of claims for declaratory and injunctive relief. The language of 1319G6A was not drawn out of a hat. Congress carefully chose that language, and the statute specifically directs its preclusive effect to one type of action, and that's a civil penalty action under Sections 1365, 1319D, or 1321B, and if Congress had intended to extend that bar on duplicative citizen penalty actions to actions for declaratory injunctive relief, it would have done so, as it has in other sections, such as in Section 1365B, no action may be commenced in the face of a judicial penalty action. Could you please go over what you want us to do specifically? Maybe that's related to this point you're making now, and in general, what is it that you're, how does that relate to what you want us to do? Yes, Your Honor, so we want this court to reverse the district court's dismissal of the Clean Water Act citizen suit claim for civil penalties and declaratory and injunctive relief, as well as the constitutional claims, but if this court were to find that the civil penalty action is barred, we would ask that the citizen suit claims for injunctive and declaratory relief survive, as the statute does not expressly preclude those claims to proceed. Retroalternative argument. Correct, Your Honor, yes. Now, if we were to remand the case, is it, are you arguing that the second amended complaint should have been allowed, so that all the ongoing discharges should be included? Yes, Your Honor, yes, absolutely. Okay, but how, are you really arguing this three-year instead of the one-year for the personal injury statute 1983? Is that a, you haven't argued it really today, or is that your position? For the inverse condemnation claim? That was, that was initially the argument. That's not your strongest argument, is it counsel? I would say probably not in the face of how this court treats, you know, as constitutional claims in federal court. You have another argument, though, on that. I mean, is your argument that some of your allegations would fall within the one-year period? Or is that, are you arguing that? Yes, yes, Your Honor, we would. And also, as we alleged earlier, because of the deception that has been alleged in the complaint, we would argue that the pleadings themselves do not conclusively establish when, you know, the takings accrued or when it took place. I'm sorry, we may be asking the same question. Is this a, is this a continuous violation, or did the taking occur when this happened for the first time, which I think was 2013 or sometime in that frame, or are we looking at each incident each time it floods? Your Honor, for a taking affected by a gradual or continuing process, such as recurrent floodings, the Supreme Court has cautioned that you can't really determine when the taking occurs until the government's invasions have stabilized, and that's the Arkansas Game and Fish Commission versus United States case that's addressed in the reply brief. And if it's okay with the court, I would like to reserve the remaining time for rebuttal, or is this the... That's fine, counsel, so you have a minute 42 and you have your rebuttal time. Okay. Oh, I'm sorry, I'm confused. I was confused about the time. I didn't... You have a minute and 35 seconds. Do you want to say something? If the court has no further questions, we'll just go to rebuttal. Thank you. Okay, thank you. Mr. Mayo. Good afternoon, Your Honor. It's been my you for... My you, my you, like by you. Yes, ma'am, for the town of Jonesboro and Mayor Bradford. I'd like to start with the citizen suit. Yes, my you, it doesn't seem, are you, I mean, correct me if I'm wrong, it doesn't seem like you're defending wholeheartedly the enforcement of the sanitary code as a comparable action. Is, I mean, are you arguing that it is or not? To be intellectually honest. Oh, and we want that. The code does not, sanitary code is not technically a comparable statutory scheme. Yeah, I think it's just not. I say technically because it misses, it's absent the notice requirement, and it's absent the public participation requirement. But Ms. Stringer had notice. She was the complainant. Her house is, her residence, her address is specifically identified in the compliance order issued by the Department of Health. I don't doubt it. I mean, it disagree with that, Your Honor. And she did participate with the Department of Health Enforcement. I mean, she alleges that at page, you know, on the record on appeal at page 202. So, okay, the spirit of comparability was met. Oh, the spirit of comparability. Okay. Technically, if you set, if you set the Clean Water Act and Halloween. I'm sorry. Nothing, I'm sorry. I'm just, I'm being mean. I just, I mean, it's, I don't, I have trouble thinking that it's technical, but I hear what you're saying. You're, but, but, so my questions to your counsel opposite were about to what extent do I need to, am I allowed to even consider the LDEQ, which has evidently been doing something with respect to this. What's your, what's your view on that? Well, Your Honor, I think, I think your, y'all's review is de novo. And so the record. Right, but we're reviewing a motion, you're reviewing a grant of a motion to dismiss though, right? Correct, correct. So how am I supposed to go outside the complaint and go look at evidence with respect to what LDEQ is doing, which as your counsel opposite pointed out, that's kind of a fact-intensive thing. Well, is what they're doing diligent and et cetera, et cetera? Well, let me, let me respond to that. First, the plaintiffs introduced the DEQ records, DEQ filings into the record. That is true. The Clean Water Act scheme is designed for the states to have primary enforcement of environmental regulations. This court recognized that in Lockheed. That's true. Which, which requires deference to the state agencies, which this court has acknowledged before, are the experts on environmental compliance. And so diligence is presumed. And the plaintiff's argument that DEQ is not they haven't succeeded. And, and as this court is aware, all the statute requires is diligent enforcement. Section 2i does not say that the regulatory agencies have solved the problem. If they have solved the problem. What do you, what is your response to the argument, it's kind of a alternative argument to this, is that even apart from the LDEQ hasn't even initiated the penalty action that would be required to trigger the Clean Water Act. What do you, what's your response to that? Your honor, we recognize a split in the circuits on that issue of whether a penalty is required at the time the citizen suits file. Where, where do we shake out in that split? I don't, I don't, I don't believe you have yet. Uh oh. Not that we've Well, the First Circuit in North and South Rivers versus, and I'm going to butcher this, situate 949 F 2nd 552. Deferred and said the state agency, we're going to defer to whether and if so, how much the penalty of state agencies going to assess. We think that's the better argument. Three reasons. First is that 1319 2 I requires simply enforcement of an action. The legislature could have required the enforcement of a civil penalty action, but they didn't use that language. Secondly, isn't that language in 1365? No, sir. 1319. Yeah, I know we're talking about 1319. Does 1365 seem to be worded a little bit differently? It is. 1365 encompasses, I think, both civil penalty and injunctive actions. Okay. All right, so there's a split on that issue, and you want us to weigh in on the side of the First Circuit. I do. And for a second reason, Your Honor, requiring that a civil penalty be imposed before the citizen suit is filed is simply unworkable. This is a process, and enforcement action is a process. You start with a complaint, the investigation, and then way down the road, at some point, there's a penalty that's assessed. DEQ requires, I mean, the legislature requires DEQ to consider how the respondent cooperated with the counsel. Counsel, what do we do about the fact that there's nothing happening to comply, that there's compliance order has gone out, and it's no compliance whatsoever, even though they alleged that they said that they complied. They say that they're lying, but I'm not saying that. I mean, that's in the record. So what... The fact that no compliance is happening, and this is what we're supposed to be waiting for, then, for the citizen suit. Your Honor, I'll backtrack to where I was. Yeah, please help me. The diligent enforcement is presumed. But it's been rebutted. It may have been presumed, but it certainly hasn't been arguably rebutted, where nothing has happened, and there continue to be, even through this past year, dumps in the yards, in the yard. Your Honor, I attempted to supplement the record with the public filings from the LDQ that I probably shouldn't talk about, but those records refute the bare allegations of the plaintiff's second supplemental complaint that nothing's being done. Well, shouldn't that go back to the district court, then, so that they can look at all these... If that's an issue, then we should let the district court look at all that. That may have been the reasoning of the judge who denied the motion to take judicial notice. I don't know. I think that was me. Your Honor, let's look at what is true the day the citizen suit was filed. Sir, you say, can you answer my question first? I promise you, you can tell me to look, what to look, tell us all to look, what to look at. But if you depend on information that the district, that wasn't considered in order to win, and it hasn't been considered yet, and appropriately evaluated, and it's factually contested, shouldn't it have to go back to the district court? We need to look at the record as it existed on the date the citizen suit was filed. Was there diligent enforcement on that date? Because if there was diligent enforcement on that date, then a citizen suit is preempted under Section 2. We can't, it can't be the law that we file a citizen suit, and we let it rock and roll along for months and years, and then at the end of the day, decide whether there was diligent enforcement on the day the citizen suit was filed. Because then we have parallel, then we'll have parallel proceedings, which is precisely what 1319 Section 2 is designed to conclude. Does that answer your question, Your Honor? I'm doing my best. You did your best, and so you can move on to your next point. That'd be fine. Okay. To finish my thought on the whether penalties required, let's look at this case as it stands right now. No penalty has been assessed. If we permit the citizen suit to go forward on the grounds that no penalty has yet been assessed, what do we do if DEQ penalizes, assesses a penalty next week? Do we then go back and dismiss the citizen suit, or do we allow parallel proceedings and expose the town to both penalties under federal law and state law? I hear what you're saying, but once again, this is, to be clear, the district court did not address this issue. No, sir, he did not. Okay. And he did not. Finally, we think with respect to a penalty, the deference to the regulatory agency should be allowed. The agency could reasonably decide that instead of assessing a penalty, the town's scarce resources could better be spent on buying a new pump for the cemetery lift station. So with respect to the requirement of a penalty, we think that's simply not in the statute, and it's not good policy. With respect to the claim for injunctive relief, if the civil penalty action is not allowed, then the plaintiffs contend they can go forward with an injunctive relief action parallel to the state court regulatory action. Again, there's a contrary. We have not found that this circuit has spoken to that issue, but again, we think the first and the eighth have the better argument. And again, it's the reasoning is deference to the expert regulatory agencies. If the district court were to start enforcing injunctive relief, that could be contrary to conflict, different schedules. I mean, it would be superfluous and wasteful in our view to have both proceedings going on at the same time. I hear you. I want to be sure you get to the timeliness issue on the constitutional claims. Yes, sir. Isn't it? Is it? Is it the case? What if we looked at the complaint and we did find that maybe not all of the all the instances alleged occurred within the one year period, but some did. Wouldn't those wouldn't those claims be not time barred? In other words, it's not an all or nothing thing. Yes, sir. We think it is. The the well, I guess we'll talk about the takings claim first. The reason that Miss Stringer's yard gets flooded is because the system gets overwhelmed when you're right. That has been a car that that is the defect that we're trying to get fixed here. And that defect has existed since 2011, I think, according to the police. Every time it rains. I mean, we're not turning a valve in directing wastewater to her house. And the I'm sorry, the Louisiana courts and the Eastern District of Louisiana have spoken to this. Periodic floodings due to faulty infrastructure is not a cracked case. We cited versus report and Delaney versus Union Pacific. We started out of the Eastern District, so each new flood does not create a new a new tort. It's just continuing damage from a 10 year old problem. I see. I see. I get your argument. So you think that it's all nothing because it all Yes, sir. We do. That's exactly our position. And with respect to the First Amendment retaliation claim. The point alleges that the retaliation began in 2015. The damage caused by the retaliation has been has been existing again since 2011. And under the law, the retaliation must cause the damage. So the I'm sorry, the retaliation allegedly began in 2015. So it expired in 2016. And then they have not alleged a true First Amendment retaliation claim because damage predated the the alleged action. Okay. I think I've covered my points unless the court has any questions. Thank you. I think we have your argument counsel. Thank you. You've saved time for rebuttal. Counsel, you may proceed. Thank you, Your Honor. Just to sort of address the points made by counsel. The town has has alleged that DEQ has been diligently prosecuting the LEQA and has been on the town of Jonesboro's back for this same problem since 2013. But if that were true, it does beg the question. If DEQ were diligently prosecuting and we're doing a shop, then why have the discharges continued without any signs of slowing down or stopping over the past seven years? And why are they continuing to why are they continue to this very day? And that is the issue that led Ms. Stringer to file her clean water citizen suit was that, yeah, of course, DEQ has been doing something. Maybe diligently documenting, but not diligently prosecuting. And something more needs to be done. And at what point a penalty should be assessed, of course, is within the sound discretion of the respective state agency. However, if you look at record page 141, 142, there actually is a DEQ enforcement history list. But never once in the past 10 years has DEQ assessed an administrative penalty against the town. Is the issue that the record on this point is just underdeveloped? Yes, Your Honor, with respect to LDEQ. With LDH, of course, the argument is they can't. It's not a comparable state law. It's not enforcing the Clean Water Act. So whatever LDH has been doing doesn't preclude this citizen suit from proceeding. But if that's right, and we know that was maybe the lead basis for the district court's conclusion to dismiss the civil suit, LDEQ is also referenced. We just don't know. I mean, as a court, we can't take notice of what's actually happened. So do we need to send that back to develop the record? Yes, Your Honor. Absolutely. As stated earlier, even if this court were to find that the issuance of a compliance order without a penalty assessment marks the triggering event for 1319 G6A, the issue of diligent prosecution is still a very fact-intensive question that cannot be answered from the record here or on the face of the pleadings. And that's not properly resolved on a 12B6 motion to dismiss. And, you know, remanding to the district court to flesh out the details and develop a proper record would be the proper course. So I take it you disagree with counsel's offensive assertion that our law is that diligence is presumed. Your Honor, I don't necessarily disagree. I believe diligence can be presumed until it has been questioned. It's not an irrebuttable presumption, right? I'm sorry? It's not an irrebuttable presumption. As far as I've been able to tell, it is not an irrebuttable presumption. That's a friendly question. Yeah. I would argue that based on the factual allegations in the complaint, taken as true, together with the record as a whole, creates genuine issues of fact. You know, sure, the presumption of diligence may exist. But here, in the face of that presumption, these discharges are ongoing, continuous and have been long after the government has invoked its enforcement power. And that's sort of, you know, the catalyst that led to Stringer filing the suit. I want to try to distinguish. Mr. Mayu brought up some cases that he, in his view, showed that this is really continuing tort, started in 2011. So the whole thing is time barred. If you want to, I mean, you may do this in your brief. I just didn't know if you want to respond to that.  But very quickly, I would argue that Louisiana Supreme Court's case of Crooks versus Department of Natural Resources, pretty much just it takes the continuing tort theory away from a takings because it is not a tort, it's an appropriation. It's the taking of a servitude, essentially. And the, I was a bit confused reading some of the, you know, reading in the briefs, because one minute they're saying that it's not a taking and one minute that it is. I would argue that the stabilization doctrine that is used by the federal circuit and Tucker Act claims applies equally here. We'll look at that. Thank you, Your Honors. We have your argument. We appreciate both of you appearing today in our virtual setting. And appreciate the arguments on both sides that were helpful. Thank you, Judge. We are going to stand in recess, having considered the last case of this week, pursuant to the usual order. Thank you very much. Thank you. Thank you.